UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | No. 11 B 31145 |
| | ) | |
| AMY A. HIJJAWI, | ) | Chapter 7 |
| | ) | (Converted from Chapter 11) |
| Debtor. | ) | |

MEMORANDUM OPINION ON
DEBTOR'S MOTION TO EXTEND AUTOMATIC STAY

This case was filed by Amy Hijjawi ("Debtor") under Chapter 11 of the Bankruptcy Code but was converted into Chapter 7. In the original Chapter 11 case, the secured creditor Five North Wabash Condominium Association ("Association") moved for relief from the automatic stay to allow the Association to enforce its non-bankruptcy rights and remedies by dispossessing Debtor from three condominium units. As the Association's motion was granted, Debtor's motion to voluntarily convert the failed Chapter 11 case to Chapter 7 was also granted. Debtor has filed her own motion to extend the automatic stay contending that the creditor should not be allowed to collect pre-bankruptcy debt that is about to be discharged in Chapter 7.

The parties have briefed the legal issues. There are no material fact issues. For reasons stated below, Debtor's Motion to Further Extend the Automatic Stay will be denied by separate order.

JURISDICTION

Jurisdiction lies under 28 U.S.C. § 1334 and Internal Operation Procedure 15(a) of the District Court for the Northern District of Illinois. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G). Venue is properly fixed in this District pursuant to 28 U.S.C. § 1409.

BACKGROUND

Debtor owns three (3) condominium units at Five N. Wabash in Chicago, Illinois ("Units"). In 2011, in violation of the Association's Declaration of Condominium, dated

1

November 13, 2003 ("Declaration") and the Chicago Vacation License Ordinance ("Ordinance"), Debtor began renting the Units on a short-term basis.[1] After issuing a written violation and holding a hearing, the Association fined Debtor and demanded that Debtor cease and desist all short-term rentals of the Units by June 30, 2011.

When Debtor failed to comply, the Association filed a Verified Complaint for Injunctive Relief in the Circuit Court of Cook County, seeking, among other things, an injunction preventing Debtor from renting her units on a short-term basis ("Injunction Action").[2] On the same day that it filed the Injunction Action, the Association also filed a Motion for a Temporary Restraining Order (the "TRO Motion"). On July 11, 2011, Circuit Court Judge Mary L. Mikva granted the Association's TRO Motion and issued a Temporary Restraining Order ("TRO"), which barred Debtor effective immediately from accepting any more short-term rental reservations. Judge Mikva also ordered Debtor to shut down her rental business by August 1, 2011, provided that the Association obtained a surety bond by that date. That bond was provided on July 29, 2011.

On July 29, 2011 ("Petition Date"), Debtor commenced this case by filing a petition for relief under Chapter 11 of the Bankruptcy Code. Debtor continued to rent the Units on a short-term basis, in violation of the Declaration, the Ordinance and the TRO. On September 1, 2011, the Association's Motion to Lift the Automatic Stay (Dkt. 16) was granted to permit the injunction proceeding to proceed and to enable the Association to enforce the TRO until January 1, 2012 ("TRO Lift Stay Order").[3] (Dkt. 31)

On November 9, 2011, the Association filed another Motion to Lift Stay ("Association's Lift Stay Motion") under § 362(d)(1) and (2), this time to allow the Association to enforce its non-bankruptcy rights and remedies by dispossessing Debtor from the Units pursuant to the Illinois Condominium Property Act and the Illinois Forcible Entry and Detainer statute. (Dkt. 39) The Association alleged that Debtor was delinquent in paying her post-petition common element

---

[1] The Declaration prohibits leasing of units for a term less than six (6) months. The Ordinance covers rentals for a period of 30 or fewer consecutive days.

[2] Five N. Wabash Condominium Association v. Hijjawi, Case No. 11 CH 23830.

[3] The 14-day stay provided by Bankruptcy Rule 4001(a)(3) was waived. On December 12, 2011, this court extended the TRO Lift Stay Order indefinitely to allow the Injunction Action to proceed to final resolution.

expenses, including monthly assessments and legal fees incurred by the Association in its effort to police Debtor's compliance with the prohibition against short-term rentals. The Association also argued that Debtor had no equity in the Units and there was no reasonable possibility of a successful reorganization in Chapter 11 within a reasonable time.

Debtor subsequently filed a motion to convert the case to one under chapter 7 of the Bankruptcy Code, which was granted on January 9, 2012 ("Conversion Date"). On the same day the motion to convert was granted, the Association's Lift Stay Motion was granted so as to allow the Association to proceed with its state law remedies with regard to the Units. (Dkt. 75) The Order lifting the stay was made effective February 10, 2012 to allow the Chapter 7 Trustee an opportunity to assess whether or not to administer the assets in question, i.e., the three condominium units and the rents derived from the possession thereof, before the Order became effective.

On January 31, 2012, Debtor filed her Motion to Extend Automatic Stay ("Debtor's Motion"). The Association filed its objection to Debtor's Motion on February 9, 2012. On oral motion of the Chapter 7 Trustee and after a hearing on February 10, 2012, the automatic stay was extended and supplemental briefing ordered on the issues, including the issue as to whether the post-petition pre-conversion assessments were dischargeable.

Debtor filed her response to the Association's objection on February 16, 2012. The Association filed its reply on February 24, 2012. The Association supplemented its reply on February 28, 2012 to bring to the Court's attention that CitiMortgage had been granted stay relief enabling it to foreclose on the same property that is the subject of Debtor's Motion.[4] Debtor filed her sur-replies in response to the Association's supplement on February 29, 2012 and March 1, 2012.

After a hearing on March 2, 2012, over the objection of the Association, the stay was again extended and supplemental briefing ordered. The Association filed its supplemental brief in support of its objection on March 8, 2012. Debtor filed her response to the Association's supplemental brief on March 14, 2012.

---

[4]CitiMortgage's Motions for Relief from Stay on the Units were granted on February 23, 24, and 28, 2012.

After a hearing on March 16, 2012, an oral ruling in favor of the Association was indicated. However, an order was not entered and the stay extended so that the Association could file a statement with a detailed accounting of post-petition pre-conversion assessments and fees, which the Association filed on March 25, 2012 ("Statement"). The case was set for status on March 27, 2012.

At the March 27, 2012 status hearing an order was entered allowing Debtor to file a response to the Statement regarding the amount of the assessments and fees and providing for the Association to file a reply, with a hearing set for April 20, 2012. The court again extended the stay to that date. Debtor filed her response on April 10, 2012, and the Association filed its reply on April 16, 2012.

The intent of the foregoing was to determine all of the non-dischargeable claims of the Association and ascertain whether Debtor is prepared or not bring them current.

## **DISCUSSION**

In its Motion for Relief from the Automatic Stay, the Association contended that it was not adequately protected because Debtor was delinquent in paying her post-petition common element expenses, including monthly assessments and legal fees. Also, at the time of the Association's Motion, Debtor had failed to comply with a prohibition against short-term rentals. The Association also argued that Debtor did not have equity in the Units, which Debtor conceded, and therefore the Units were not necessary to an effective reorganization. With conversion to Chapter 7, of course, no reorganization was possible.

As described above, the Association's Lift Stay Motion was granted, but the effect stayed because of the conversion of the Chapter 11 case to Chapter 7 case. During the period the Order was stayed, Debtor filed her Motion to Extend the Stay, contending that as a result of the conversion to Chapter 7, the unpaid post-petition assessments and fees up to the date of conversion are dischargeable despite 11 U.S.C. § 523(a)(16) and, thus, can no longer be a valid basis for the Association's Lift Stay Motion. This appears to be a case of first impression as to the effect of the conversion of a case to Chapter 7 on § 523(a)(16) and the dischargeability of post-petition pre-conversion condominium association assessments and fees.

4

Authority to Extend the Stay

Pursuant to § 362(e)(1) of the Bankruptcy Code, the automatic stay terminates thirty (30) days after a request is presented for relief from stay under subsection (d) with respect to the requesting party unless the court orders continuation of the stay after notice and a hearing or as a result of a final hearing and determination of the matter. However, where the chapter 7, 11, or 13 debtor is an individual, § 362(e)(2) the automatic stay is terminated 60 days after the request, unless a final decision is rendered within that period or such 60-day period is extended by agreement of all parties in interest or by the court for such specific period of time as the court finds is required for good cause.

The Association's Lift Stay Motion was filed on November 9, 2011. A final hearing on the Association's Lift Stay Motion was held on Monday, January 9, 2012. Under Bankruptcy Rule 9006(a), any period of time due to expire on a Saturday, Sunday or legal holiday runs until the end of the next day which is not a Saturday, Sunday or legal holiday. Sixty days from November 9, 2011 was Sunday, January 8, 2012. Monday, January 9 was the next business day and the date upon which the 60-day period was due to expire absent an order extending it.

On that day, the court granted the Association's Lift Stay Motion, but stayed the effect of the Order until February 10, 2012. On the same day, Debtor's motion to convert the case from Chapter 11 to Chapter 7 was granted. Before the stay on the Order expired, Debtor filed her Motion to Extend Automatic Stay. The Court subsequently extended the 60-day period under § 362(e)(2) for specified for good cause periods before rendering this final decision, in particular: (1) to allow the parties to develop the facts in support of and in opposition to Debtor's motion, (2) to allow the parties to brief the important and novel legal issues that arose as a result of the case conversion, (3) to allow the Chapter 7 Trustee to review the case and determine her position on the matter and the converted case, and (4) to give Debtor an opportunity to reconcile and cure all post-petition debts due to the Association after those debts were specified and defined.

Pre-Petition vs. Post-Petition Debt

This matter turns on whether the discharge provision of Chapter 7 of the Bankruptcy Code applies to homeowner association assessments and fees that became due and payable after the filing of a Chapter 11 petition ("post-petition"), but before conversion of the Chapter 11 case to

5

Chapter 7 case ("pre-conversion"). Although Debtor concedes that she failed to pay certain post-petition pre-conversion assessments, fines and other fees during that period, she contends that such debts owed to the Association are dischargeable to the extent that they were incurred prior to the Conversion Date, in which case the Association is adequately protected as of the Conversion Date and there is no longer a basis for the Association's Lift Stay Motion to enable collection of any debts that came due prior to the Conversion Date.

Section 727 generally provides that a Chapter 7 debtor may be discharged from all debts, except for those specified in § 523, that arose before the date of the order for relief under Chapter 7. Section 727(b) specifically provides in relevant part that "*[e]xcept as provided in section 523 of this title*, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the *order for relief under this chapter* . . . ." 11 U.S.C. § 727(b) (emphasis added).

In an initial Chapter 7 case the "order for relief under this chapter" refers to the filing of the Chapter 7 petition pursuant to 11 U.S.C. § 301(b). Where a Chapter 11 case is converted to a case under Chapter 7, determination of the date of the "filing of the petition," the "commencement of the case" and the "order for relief" in the Chapter 7 case is made pursuant to § 348 of the Bankruptcy Code. *Rock River Production Credit Assoc. V. Langholf (In re Langholf)*, 37 B.R. 414, 418-419 (Bankr. N.D. Ill. 1984). Section 348(a) provides that "[c]onversion of a case . . . constitutes an order for relief under the chapter to which the case is converted, but, *except as provided in subsections (b) and (c) of this section*, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." 11 U.S.C. § 348(a). In other words, subject to certain exceptions, the filing of the petition, commencement of the case, and order for relief in a Chapter 7 case that has been converted from a case under Chapter 11 are all deemed to have occurred on the same date upon which those events occurred in the original Chapter 11 case. *Id.* at 419. In *Langholf*, the Opinion determined that none of the exceptions referred to in § 348(a) were applicable in that case and the analysis ended there. However, in this case, one of the exceptions is applicable.

Section 348(b) provides in pertinent part that "[u]nless the court for cause orders otherwise, in sections . . . 727(b) . . . of this title, 'the order for relief under this chapter' in a chapter to which a case has been converted under section . . . 1112. . . of this title means the conversion of

6

such case to such chapter." 11 U.S.C. § 348(b). That provision means that the "order for relief" refers to the date the case is converted to Chapter 7, and not the original petition date under another Chapter. Therefore, reading §§ 727(b) and 348(b) together, all debts that arose after the filing of the Chapter 11 petition but before the conversion (except those listed in § 523) are treated as pre-petition debts, and are therefore dischargeable. *Flickling v. Flower, Medalie & Markowitz, Esqs. (In re Flickling)*, 361 F.3d 172, 174 (2nd Cir. 2004) (because claims for attorneys' fees and expenses were incurred post-petition, but pre-conversion, and no exemption applied, such claims were dischargeable).

However, it is the exception set forth in § 727(b) that comes into play in this case. Debts that are otherwise dischargeable may be excepted from discharge under § 523, which exempts designated claims from discharge. Those include homeowner association assessments and fees that are the subject of the dispute here. Specifically, § 523(a)(16) of the Bankruptcy Code provides in relevant part:

> A discharge under section 727, 1141, 1223(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –
> \*\*\*
> (16) for a fee or assessment that becomes *due and payable after the order for relief* to a membership association with respect to the debtor's interest in a unit that has condominium ownership, . . ., for as long as the debtor or the trustee has a legal, equitable, or possessory ownership interest in such unit, . . ., but nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a *period arising before entry of the order for relief* in pending or subsequent bankruptcy case[.]

11 U.S.C. § 523(a)(16) (emphasis added).

Section 523(a)(16) thus creates an express exception to discharge for certain condominium association assessments and fees that become due and payable after the Chapter 11 filing and "order for relief" where a debtor continues to have a legal, equitable or possessory interest in a condominium unit. The provision was added to the Code to resolve a conflict in the courts about whether condo association fees accruing post-petition in a Chapter 7 case are nevertheless discharged because the contract establishing the fees was entered into pre-petition. *See In re Barr*, 457 B.R. 733, 736-37 (Bankr. N.D. Ill. 2011). The Bankruptcy Abuse Prevention and

Consumer Protection Act of 2005 ("BAPCPA") amended § 523(a)(16), substantially narrowing the ability to discharge condominium fees. *In re Barr*, 457 B.R. 733, 736-37 (Bankr. N.D. Ill. 2011). Pre-BAPCPA, § 523(a)(16) provided that a post-petition condominium fee or assessment was excepted from discharge if the debtor physically occupied the unit or, as here, rented the unit to a tenant and received payments from the tenant. The amended version of § 523(a)(16) was intended "to broaden the protection accorded to community associations with respect to fees or assessments arising from the debtor's interest in a condominium . . . ." H.R. REP. NO. 109-31, at 68 (2005), *reprinted* in 2005 U.S.C.C.A.N. 88, 154.

Debtor's position is predicated on the argument that the operative date is the Conversion Date, not the initial Petition Date in the Chapter 11 case. Debtor cites *In re Barr*, 457 B.R. 733 (Bankr. N.D. Ill. 2011) (Squires, J.) for the proposition that the assessments and legal fees in this case are pre-petition and dischargeable. In *In re Barr*, the debtor filed a motion for sanctions against the condominium association for attempting to collect a special assessment from the debtor in violation of 11 U.S.C. § 524(a). The issue in that case was whether the special assessment was a pre-petition debt, in which case the association would be in violation of § 524(a), or post-petition debt, in which case it would be dischargeable under § 523(a)(16). However, *Barr* is not helpful in that it did not involve and, therefore, did not address how a case conversion impacted § 523(a)(16).

Where a statute is unambiguous, its plain language must be followed. *Caminetti v. U.S.*, 242 U.S. 470, 485-487, 37 S.Ct. 192, 194-195 (1917); *People v. Patterson*, 308 Ill.App.3d 943, 947, 242 Ill.Dec. 518, 721 N.E.2d 797 (1999). The phrase "order for relief" used in both the beginning and end of § 523(a)(16) is not the same as the phrase "order for relief under this chapter" used in § 727(b). Whereas, § 348(b) specifically refers to § 727(b) in determining that the meaning of the phrase "the order for relief under this chapter" means the date of conversion, § 348(b) makes no reference to § 523, which is the exception at issue here. Section 523(a)(16) refers only to "the order for relief," not "the order for relief under this chapter" addressed by § 348(b). In such cases § 348(a) governs the impact of the conversion of a case and provides specifically that a conversion "does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." As a result, the "order for relief" referred to in § 523(a)(16) means the original date that the bankruptcy case was filed on July 29, 2011.

Accordingly, the term "order for relief" used in § 523(a)(16) is the date Debtor filed her petition in the original Chapter 11 case, i.e., the Petition Date, not the Conversion Date. As a result, such unpaid post-petition association assessments and fees that came due pre-conversion are non-dischargeable and provide sufficient basis for the Association's Lift Stay Motion.

Pursuant to § 362(a), a petition filed under §§ 301, 302, or 303 triggers the automatic stay of certain actions against the debtor or the debtor's property. Under § 348(a), a conversion order does not change the date of the filing of a petition, and a conversion of a bankruptcy case from one Chapter to another Chapter under the Bankruptcy Code does not re-establish an automatic stay previously lifted by a court order during the Chapter 11 proceeding. *Agri-Best Holdings, LLC v. Atlanta Cattle Exchange, Inc.*, 812 F.Supp.2d 898, 902 (N.D. Ill. 2011); *In re T.S.P. Industries, Inc.*, 117 B.R. 375, 378 (Bankr. N.D. Ill. 1990); *In re State Airlines, Inc.*, 873 F.2d 264 (11th Cir. 1989). Therefore, the Association was entitled to lift stay relief to enable it to exercise its post bankruptcy creditor rights limited only by continued stay protection against it for bankruptcy debt that can be discharged in the Chapter 7 case.

In its most recent brief filed without leave of court, Debtor argues that the statutory exceptions to discharge should be construed narrowly so as to help Debtor obtain a fresh start, citing two Opinions construing some of those exceptions. *Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215 (4th Cir. 2007); *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126 (4th Cir. 1999). Those cases each stand for the proposition that exceptions to the discharge found in § 523 must be narrowly construed in favor of the debtor's discharge. Each of those Opinions, however, relies on the language of the applicable statute. In one case, a plain reading of the statute worked to the debtor's favor. In the other, however, a plain reading worked against the debtor's discharge. The statutory exception applied here is not ambiguous, and the holding herein relies on the statutory text.

Post-Petition Amount Due

There remains the question of what the Debtor owes for the period ending with her conversion to Chapter 7.

On March 25, 2012, the Association filed its Statement Regarding Debtor's Post-Petition, Non-Dischargeable Obligations ("Statement"). The Statement indicates that, as of March 22,

2012, the post-petition (from 8/1/2011 to 3/22/2012), non-dischargeable amounts owed by Debtor totaled $42,659.14, consisting of the following:

| | | |
|---|---:|---:|
| Unpaid monthly assessments and late fees | | |
|     Unit 1001 | $ 3,000.80 | |
|     Unit 1401 | 3,055.34 | |
|     Unit 1402 | 2,273.31 | $ 8,329.45 |
| Unpaid fines under the Declaration in connection with Debtor's continued short-term rental of the Units ($500 on each Unit) | | 1,500.00 |
| Association's legal fees and costs— | | |
|     Law Office of David L. Rudolph, P.C. | | 8,112.79 |
| Association's legal fees and costs— | | |
|     The Law Office of William J. Factor, Ltd. | | 24,716.90 |
| | | $ 42,659.14 |

The Association is entitled to its legal fees and costs under both the governing Declaration and Illinois law. Section 14.1 of the Declaration applicable to Debtor provides, in relevant part:

> All expenses of the Board in connection with such actions or proceedings, including court costs and attorneys' fees and other fees and expenses, and all damages, liquidated or otherwise, together with interest thereon at the rate of twelve percent (12%) per annum until paid, shall be charged to and assessed against such defaulting Unit Owner, and shall be added to and deemed part of his respective share of Common Expenses and the Board shall have a lien for all of the same upon the Unit Ownership of such defaulting Unit Owners and upon all of his additions and improvements thereto and upon all of his personal property in his Unit or located elsewhere on the Condominium Property. Any such rights and remedies may be exercised at any time and from time to time cumulatively or otherwise by the Board.

Section 9.2 of the Illinois Condominium Property Act provides in relevant part that "[a]ny attorneys' fees incurred by the Association arising out of a default by any unit owner, his tenant, invitee or guest in the performance of any of the provisions of the condominium instruments, rules and regulations or any applicable statute or ordinance shall be added to, and deemed a part of, his respective share of the common expense." 765 ILCS 605/9.2. *See also* 765 ILCS 605/9(g)(1).

At the hearing herein held on March 27, 2012, Debtor tendered payment for the assessments on her Units for the months of January, February, and March 2012 in the total amount

of $5,825.55. Since that payment was not credited on the Association's Statement, the total owed by Debtor must be reduced by that amount.

Debtor's Response filed on April 10, 2012, argues that the Association failed to credit her for the August 2011 assessments on all the Units that she paid pre bankruptcy on July 15, 2011 (prior to the filing the Chapter 11 bankruptcy case) that is found to have been in the total amount of $1,903.81.[5] The Association, upon receiving that pre-bankruptcy payment, followed its policy and normal procedure to apply payments to past-due amounts regardless of the category. Therefore, the Association applied the July 15, 2011 pre-bankruptcy payments to past due assessments, including attorney fees, incurred prepetition. That is not an issue that need be decided here, because even if such payments should have been applied for some reason to Debtor's post-bankruptcy debts claimed due here they would not make a difference to the present ruling.

Debtor has also argued that the Association's attorney's fees are excessive. However, Debtor failed until recently to provide any specific objection to any part of the fees claimed, although given the prior opportunity to do so, Debtor's original general and vague objection to the amount of the attorney's fees claimed as "excessive" would have been overruled.

In her tardy specifications of objections to fees, the objection to a "fine" of $1500 imposed without leave of court during the bankruptcy case is allowed as a violation of the automatic stay.

As to the other objections, a few may have partial merit and some are facially insufficient to pinpoint particular objections. Giving a generous and unlikely assumption, Debtor might in a fully litigated (and very expensive) evidentiary hearing over fees be able to show valid objections

---

[5] Debtor's most recent brief, filed on May 2, 2012, alleges that "[t]he Association has insisted on not giving the Debtor credit for her pre-petition payment of assessment for the post-petition month of August, 2011, in the sum of approximately $8,329.45." (Resp. of Debtor to Claim of Five North Wabash Condominium Assoc. ¶ 15) Debtor does not state therein how she arrived at that amount. In an earlier Response to the Association's Statement, filed on April 10, 2012, Debtor supplied an Owner Ledger for each condominium unit owned by the Debtor that details charges and payments made by the Debtor for fees. Debtor's pre-petition payment for August 2011 assessments was made on July 15, 2011. (Resp. of Debtor to Five North Wabash Condominium Assoc. Statement Regarding its Claim Incurred After the Petition Date Exs. 1–3) Those payments are as follows:

| Unit 1401 | Payment $703.29 | Check No. 146209718 |
| Unit 1402 | Payment $510.67 | Check No. 146207885 |
| Unit 1001 | Payment $689.82 | Check No. 146217720 |
| | Total: $1903.81 | |

Therefore, it appears Debtor paid only $1903.81 on July 15, 2011.

to up to one-third of the fees claimed by experienced counsel. For our purposes here that possibility is assumed but not decided.

The post-bankruptcy claim of the Association, which would not be dischargeable and is steadily increasing each month, is therefore shown below.

The post-bankruptcy assessments and added attorneys' fees now due stand at minimum as follows:

| | | |
|---|---|---:|
| Unpaid monthly assessments and late fees | | $8,325.61 |
| Minimum Legal fees and costs due | $32,829.69 (less one-third) [6] | 21,886.41 |
| | | $30,212.02 |
| | (less March 27, 2012 payment) | $5,825.557 |
| | Minimum due: | $24,386.47 |

Thus, even if the July 15, 2011 payments were credited, Debtor still owes a substantial post bankruptcy debt that is increasing. Debtor has no equity, Debtor does not offer or show ability to pay any part of the non-dischargeable debt now due nor the future debt accruing, and the creditor's interests in the Units are not protected.

## CONCLUSION

For the foregoing reasons, by separate order:

1. The Association's Motion to Lift the Stay, granted by a Final Order on January 9, 2012 to allow the Association to enforce all its non-bankruptcy rights and remedies by dispossessing debtor and to collect amounts due to it that accrued since Debtor's bankruptcy was filed on July 20, 2011 will no longer be stayed. Jurisdiction is reserved to enlarge that Order to allow collection of the pre-bankruptcy debt if this case is dismissed or if discharge is denied;

2. The provisions of Rule 4001(a)(3) Fed. R. Bankr. P. will not be applicable to this Order granting the Association relief from the automatic stay or to this Order; and

---

6 Assumed but not decided.

12

3. Debtor's Motion to Further Extend Automatic Stay will be denied.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 11th day of May, 2012.